# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **QIANCHENG ZHAO,** | § | |
| | § | |
| *Petitioner*, | § | |
| | § | |
| **v.** | § | |
| | § | |
| **WARDEN OF THE EL PASO** | § | |
| **PROCESSING CENTER**; | § | |
| **TODD LYONS**, Acting Director of | § | **EP-25-CV-00635-DCG** |
| Immigration and Customs Enforcement; | § | |
| **MARKWAYNE MULLIN**, Secretary of the | § | |
| U.S. Department of Homeland Security; *and* | § | |
| **TODD BLANCHE**, Attorney General of the | § | |
| United States, | § | |
| | § | |
| *Respondents*. | § | |
| | § | |

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Qiancheng Zhao ("Petitioner") seeks a writ of habeas corpus under 28 U.S.C. §

2241.[1] Petitioner argues that his ongoing detention by United States Immigration and Customs

Enforcement ("ICE") violates the Due Process Clause of the Fifth Amendment.[2] Federal

---

[1] *See generally* Pet., ECF No. 1.

[2] *Id.* at 8–10; *see also* Pet'r's Suppl. Br., ECF No. 11, at 6 (conceding that "Petitioner no longer pursues a statutory entitlement to bond," but that "Petitioner's constitutional, administrative-law, and other non-statutory claims . . . remain fully viable").

Because the Court concludes below that Petitioner is entitled to habeas relief under the Fifth Amendment, the Court need not reach his other claims. *See, e.g.*, *Fleming v. Collins*, 917 F.2d 850, 852 (5th Cir. 1990) ("Because we grant habeas corpus [relief] . . . on the first ground, we need not reach the other claims [petitioner] raises."); *Trotter v. Warden La. State Penitentiary*, 718 F. Supp. 2d 746, 756 (W.D. La. 2010) ("Petitioner is entitled to habeas relief on the claim. The court need not reach the other claims raised by Petitioner." (citation modified)).

All page citations in this Order refer to the page numbers assigned by the Court's CM/ECF system, rather than the internal pagination of the cited document.

Respondents ("Respondents") oppose the Petition.[3]

For the following reasons, the Court **GRANTS** the Petition for Writ of Habeas Corpus (ECF No. 1) **IN PART** and **ORDERS** Respondents to either give Petitioner a bond hearing or release Petitioner from custody.

## I.   Background

### A.   Factual History

Petitioner is a citizen of China who entered the United States on October 8, 2023.[4] Shortly thereafter, the Department of Homeland Security ("DHS") detained Petitioner near Otay Mesa, California.[5] On October 10, 2023, the Government issued a Notice to Appear  ("NTA") charging Petitioner as "an alien present in the United States who has not been admitted or paroled,"[6] then released him on conditional parole.[7]

On release, Petitioner filed an application for asylum and attended regular check-in appointments with United States Immigration and Customs Enforcement ("ICE").[8] ICE agents

---

[3] *See generally* Resp., ECF No. 5.

[4] Pet. at 2, 5; Pet'r's Suppl. Br. At 7.

[5] Pet. at 5; NTA, ECF No. 1-1, at 2.

[6] An NTA is a charging document that "initiates a proceeding before an Immigration Judge." *See* 8 U.S.C. § 1003.13; *id.* § 1003.14(a) ("Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court . . . .").

*See* NTA at 2.

[7] Pet. at 5.

[8] *Id.*

arrested and detained him at a routine check-in on November 19, 2025.[9] Petitioner was transferred first to Delaney Hall in New Jersey, then to the El Paso Processing Center in Texas.[10]

Petitioner is currently detained at in El Paso, Texas.[11] As far as the record reveals, the Government has neither (1) given Petitioner a substantive bond hearing; nor (2) entered a final administrative order of removal against Petitioner.[12]

### B.    Procedural History

On December 9, 2025, Petitioner filed a Petition for Writ of Habeas Corpus in accordance with 28 U.S.C. § 2241.[13] Petitioner argues that his ongoing detention violates the Fifth Amendment to the United States Constitution.[14] He asks the Court to, *inter alia*, order his immediate release or "alternatively direct that an IJ hold a constitutionally adequate bond hearing."[15]

---

[9] *Id.*

[10] *Id.*

[11] *Id*. at 2.

[12] In accordance with the undersigned Judge's Standing Order to Provide Status Updates in Immigration Habeas Cases, the Government was required to tell the Court if and when it provided a custody redetermination (*i.e.*, bond) hearing or issued a final order of removal against Petitioner. A copy of that Standing Order is available at https://www.txwd.uscourts.gov/wp-content/uploads/2026/04/Standing-Order-Immigration-Case-Updates-DCG.pdf.

Because the Government hasn't filed a status update indicating that it has granted Petitioner a bond hearing or issued a final order of removal against Petitioner, the Court proceeds under the assumption that no final order of removal exists.

[13] Pet. at 1.

[14] *See supra* note 2 and accompanying text.

[15] Pet. at 9.

Respondents maintain that (1) the INA requires Petitioner's "mandatory detention" while removal proceedings are ongoing; and (2) Petitioner has no valid basis to challenge his ongoing detention under the Fifth Amendment.[16]

## II.    Legal Standard

The United States Constitution guarantees that, "absent suspension, the writ of habeas corpus remains available to every individual detained within the United States."[17] Detainees bear the burden of showing that they are "in custody in violation of the Constitution or laws or treaties of the United States."[18]

Under 28 U.S.C. § 2243, the Court must "summarily hear and determine the facts, and dispose of the matter as law and justice require."[19] Because "the facts essential to consideration of the constitutional issue are already before the court," it is unnecessary to hold an evidentiary hearing to decide the Petition; the Court may instead decide the Petition on the papers.[20]

---

[16] Resp. at 1–9.

[17] *See Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST. art. I, § 9, cl. 2).

[18] *See* 28 U.S.C. § 2241(c)(3) ("The writ of habeas corpus shall not extend to a prisoner unless," with exceptions not relevant here, "he is in custody in violation of the Constitution or laws or treaties of the United States." (citation modified)).

Because habeas proceedings are civil in nature, each petitioner "must satisfy his burden of proof by a preponderance of the evidence." *See, e.g.*, *Villanueva v. Tate*, 801 F. Supp. 3d 689, 696–97 (S.D. Tex. 2025) (first quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); and then citing *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976)).

[19] *See* 28 U.S.C. § 2243.

[20] *See Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989).

### III.    Discussion

#### A.    Jurisdiction

The Court first determines whether it has subject matter jurisdiction.[21] Congress has divested district courts of jurisdiction to adjudicate certain immigration-related claims that might otherwise be cognizable under 28 U.S.C. § 2241.[22] To that end, Respondents argue that the INA prevents the Court from hearing Petitioner's claims.[23] The Court has already considered and rejected Respondents' arguments in analogous cases.[24] For those same reasons, the Court retains jurisdiction over this Petition.

---

[21] *See Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 466 (5th Cir. 2024) ("Jurisdiction is always first."); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute.").

[22] *See Jennings v. Rodriguez*, 583 U.S. 281, 292–96 (2018); *Bouarfa v. Mayorkas*, 604 U.S. 6, 18 (2024).

[23] *See* Resp. at 6–7.

[24] *See Alvarado Luna v. Warden*, 3:25-CV-00565-DCG, 2025 WL 3787494, at *6–7 (W.D. Tex. Dec. 29, 2025), *overruled in part by Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Zamudio Sanchez v. Noem*, No. 3:25-CV-00403-DCG, 2026 WL 596133, at *6–7 (W.D. Tex. Mar. 2, 2026); *Gomes v. Grant*, No. 3:25-CV-00663-DCG, 2026 WL 1179617, at *2 (W.D. Tex. Apr. 21, 2026).

### B. Immigration and Nationality Act

The parties agree that Petitioner has no statutory claim to a bond hearing.[25] The Fifth Circuit's decision in *Buenrostro-Mendez v. Bondi* foreclosed the possibility that Petitioner is currently detained under 8 U.S.C. § 1226(a) (and thus *eligible* for a bond hearing).[26]

Because Petitioner is an "applicant for admission,"[27] the Government must be detaining him under either § 1225(b)(1) or § 1225(b)(2).[28] Neither paragraph "says anything whatsoever about bond hearings,"[29] so the Fifth Circuit has concluded that "unadmitted aliens apprehended

---

[25] *See* Pet'r's Suppl. Br. at 6 (stating that "Petitioner no longer pursues a statutory entitlement to bond under § 1226(a), as binding Fifth Circuit precedent now resolves that question against him"); Resp. at 2–6.

*See also Louisiana v. Pub. Invs., Inc.*, 35 F.3d 216, 219–20 (5th Cir. 1994) ("When presented with two grounds for resolving a case, one statutory and the other constitutional in nature, we will address the statutory ground first and dispose of the case solely on that basis if possible.").

[26] In *Buenrostro-Mendez*, the Fifth Circuit suggested that the Government could apply either § 1226 or § 1225 to certain "aliens in the United States." *Buenrostro-Mendez*, 166 F.4th at 505 ("It is true that § 1226 applies to aliens in the United States. That it does so, however, does not preclude § 1225 from also applying to such aliens."). Assuming (without deciding) that the Government could detain Petitioner under either authority, nothing suggests that the Government opted to re-detain him under § 1226. *See Buenrostro-Mendez*, 166 F.4th at 498–508; NTA at 2.

[27] A noncitizen is an applicant for admission if he (1) is present in the United States but has not been admitted; or (2) arrives in the United States. *See* 8 U.S.C. § 1225(a)(1). *See also id.* § 1101(a)(13)(A) ("The terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."); *id.* § 1182(d)(5)(A) (explaining that "parole of such alien *shall not* be regarded as an admission of the alien" (emphasis added)).

*Cf.* Pet. at 4 ("Petitioner entered the United States on or about October 8, 2023 without having been paroled or admitted.").

[28] Both paragraphs direct the Government to detain an applicant for admission "throughout the completion of applicable proceedings." *See Buenrostro-Mendez*, 166 F.4th at 502 (quoting *Jennings*, 583 U.S. at 297); *see also* 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) ("Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed."); *id.* § 1225(b)(2)(A) ("[T]he alien shall be detained for a proceeding under section 1229a of this title.").

[29] *See Buenrostro-Mendez*, 166 F.4th at 502 (quoting *Jennings*, 583 U.S. at 297).

anywhere in the United States are *ineligible* for release on bond, regardless of how long they have resided inside the United States."[30] Thus, the Court need not decide whether Petitioner is detained under § 1225(b)(1) or § 1225(b)(2)—either way, Petitioner would be subject to mandatory detention without a bond hearing.

Nonetheless, the *Buenrostro-Mendez* court confined its decision to statutory interpretation and did not reach the constitutional issues that Petitioner raises.[31] The Court addresses those next.

---

[30] *Contrast id.* at 500 *with* 8 U.S.C. § 1226(a) (providing that "the Attorney General *may* release the alien *on a bond* of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or conditional parole . . . ." (citation modified) (emphases added)).

[31] *See, e.g.*, *Bonilla Conforme v. De Anda-Ybarra*, No. EP-26-CV-263-KC, 2026 WL 381110, at *2 (W.D. Tex. Feb. 11, 2026) ("*Buenrostro-Mendez* has no bearing on this Court's determination of whether a habeas petitioner is being detained in violation of her constitutional right to procedural due process." (citation modified)); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) ("The right to due process is conferred, not by legislative grace, but by constitutional guarantee." (citation modified)); *Palm Valley Health Care, Inc. v. Azar*, 947 F.3d 321, 326 (5th Cir. 2020) ("[T]he Constitution, not statutes, determine the minimum procedures that due process requires.").

**C.** **Due Process Clause of the Fifth Amendment**

Petitioner argues that the Due Process Clause of the Fifth Amendment entitles him to a bond hearing.[32] In this particular situation, the Court agrees.[33] Petitioner is entitled to relief on *procedural* due process grounds, so the Court need not analyze whether he would also be entitled to relief on *substantive* due process grounds.[34]

**1.** **Procedural Due Process**

In *Mathews v. Eldridge*, the Supreme Court articulated a three-part balancing test to determine whether a procedural due process violation has occurred.[35] The factors are as follows:

1) "The *private interest* that will be affected by the official action";

2) "The *risk* of an erroneous deprivation of such interest through the procedures used, and the *probable value*, if any, of additional or substitute procedural safeguards"; and

---

[32] *See* Pet. at 9–10.

[33] *See Jennings*, 583 U.S. at 314 (explaining that "Due Process is flexible" and "calls for such procedural protections as the particular situation demands").

[34] The Due Process Clause includes two distinct protections, and each provides an independent basis to challenge detention as unconstitutional. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 746 (1987) ("This Court has held that the Due Process Clause protects individuals against two types of government action."); *Cleveland Bd. of Educ.*, 470 U.S. at 541 ("The categories of substance and procedure are distinct. Were the rule otherwise, the Clause would be reduced to a mere tautology.").

*Substantive* due process "prevents the government from engaging in conduct that 'shocks the conscience' or interferes with rights 'implicit in the concept of ordered liberty.'" *Salerno*, 481 U.S. at 746 (first quoting *Rochin v. California*, 342 U.S. 165, 172 (1952); and then quoting *Palko v. Connecticut*, 302 U.S. 319, 325–26 (1937)). *Procedural* due process is "meant to protect against the mistaken or unjustified deprivation of life, liberty, or property." *AARP v. Trump*, 605 U.S. 91, 94 (2025) (quoting *Carey v. Piphus*, 435 U.S. 247, 259 (1978) (citation modified)). Even if "government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner." *Salerno*, 481 U.S. at 746 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

[35] *Mathews*, 424 U.S. at 334–35.

3) "The *Government's interest*, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."[36]

The Supreme Court distilled this balancing test from its prior decisions, which "indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors."[37] Thus, district courts have broadly relied on the *Mathews* factors to evaluate procedural due process challenges to pre-removal-order detention.[38]

In this case, the *Mathews* factors weigh in favor of Petitioner:

1) Petitioner possesses a cognizable interest in his physical freedom because he was previously released on conditional parole, lived at liberty in the United States for more than two years, and has family ties in the country;[39]

---

[36] *Id.* at 335 (emphases added).

[37] *Id.* at 334–35.

[38] *See, e.g.*, *Zamudio Sanchez*, 2026 WL 596133, at *11 n.116 (collecting cases).

In earlier cases, this Court explained why the *Mathews* factors remain applicable in the immigration detention context even though the Supreme Court did not expressly apply those factors in several of its immigration detention opinions. *See id.* at *12; *Gomes*, 2026 WL 1179617, at *6–7. The Court adheres to its prior conclusion that the *Mathews* factors provide the appropriate legal framework for analyzing Petitioner's due process challenge.

[39] *See* Pet. at 4–5; Pet'r's Suppl. Br. at 7 (explaining that Petitioner "has resided in the United States for over two years" and "lived with his wife in New York City throughout his time in this country").

*Cf., e.g.*, *Parham v. J.R.*, 442 U.S. 584, 600 (1979) (explaining that civil detainees possess a "substantial liberty interest in not being confined unnecessarily"); *Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668, 685 (W.D. Tex. 2025) ("Parolees . . . have a protected liberty interest in their 'continued liberty.'"); *Omer G. G. v. Kaiser*, 815 F. Supp. 3d 1098, 1109 (E.D. Cal. 2025) (same); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025) (same); *Saley v. Scott*, No. 2:26-CV-00797, 2026 WL 914810, at *4 (W.D. Wash. Apr. 3, 2026) (deeming petitioner's "family ties" pertinent to the first *Mathews* factor).

2) A bond hearing would mitigate "the risk of an erroneous deprivation of [Petitioner's liberty] interest;"[40] and

3) The burden of administering such a hearing would infringe minimally on the Government's interest in using detention to effectuate removal proceedings.[41]

The Court therefore finds that, by detaining Petitioner without the opportunity for a bond hearing, Respondents have deprived Petitioner of his right to procedural due process under the Fifth Amendment.

### 2.      Nature and Duration of Detention

This Court has not yet considered whether the nature and duration of immigration detention (as opposed to the interest-balancing facilitated by *Mathews*) would provide a distinct basis for relief under the Due Process Clause.[42]

As the Supreme Court explained in *Jackson v. Indiana*, the Constitution "requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed."[43] The purpose of immigration detention is to facilitate the lawful

---

[40] *Mathews*, 424 U.S. at 335; *see also, e.g.*, *Black v. Almodovar*, 156 F.4th 171, 194 (2d Cir. 2025) ("In the context of preventive civil detention, the most fundamental due process protection is an individualized hearing, before a neutral decisionmaker, to justify government detention." (citation modified)); *Foucha v. Louisiana*, 504 U.S. 71, 72 (1992) ("Due process requires that the nature of commitment bear some reasonable relation to the purpose for which the individual is committed." (citing *Jones v. United States*, 463 U.S. 354, 368 (1983))).

[41] *Compare Singh v. Andrews*, No. 25-CV-801, 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025) ("In immigration court, custody hearings are routine and impose a 'minimal' cost."), *with Black v. Decker*, 103 F.4th 133, 154 (2d Cir. 2024) (noting that "the Department of Justice reported an average cost of detaining noncitizens, in 2019, of $88.19 per prisoner per day").

[42] *Cf. Calderon-Chavez*, 688 F. Supp. 3d 472, 479 (W.D. Tex. 2023) (holding, in a different context, that Government violated the Due Process Clause by detaining individual for prolonged period).

[43] *Jackson v. Indiana*, 406 U.S. 715, 738 (1972); *see also Zadvydas v. Davis,* 533 U.S. 678, 690 (2001) (applying *Jackson* in the immigration detention context).

removal of noncitizens.[44] And, in the context of detention prior to a final order of removal, that means preventing noncitizens from fleeing during their removal proceedings.[45]

Here, there is no indication that Petitioner's detention is reasonably related to its purpose. The Government elected to parole Petitioner from detention in 2023,[46] which required it to conclude that Petitioner is neither a flight risk nor security risk.[47] Between then and 2025 (when the Government re-detained Petitioner), nothing suggests that Petitioner failed to appear for scheduled immigration check-ins or otherwise satisfy his conditions of supervision.[48] Considering that Petitioner effectively proved *not* to be a flight risk or security risk while released on parole, it is unclear how his current detention could "reasonably relate" to its purpose.[49]

---

[44] *See Wong Wing v. United States*, 163 U.S. 228, 235 (1896).

[45] *See Demore v. Kim*, 538 U.S. 510, 528 (2003) (explaining that detention during removal proceedings "necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed").

Although *Demore* involved a different detention authority that mandated detention of "criminal aliens," this Court construes the Supreme Court's explanation of that detention authority's purpose to apply to pre-final order of removal detention generally. *See, e.g.*, *Rodriguez v. Frink*, No. 4:26-CV-00798, 2026 WL 709487, at *6–8 (S.D. Tex. Mar. 13, 2026) (citing *Demore* and concluding that the purpose of detention under 8 U.S.C. § 1225(b)(2) was likewise to "prevent[] flight"); *cf. Buenrostro-Mendez*, 166 F.4th at 508 (suggesting that the purpose of pre-removal order detention under 8 U.S.C. § 1225(b)(2) is to prevent noncitizens from absconding during their removal proceedings).

[46] Pet. at 2; Resp. at 1–2.

[47] *See* 8 U.S.C. § 1182(d)(5)(A) ("The Secretary of Homeland Security may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien . . . ."); 8 C.F.R. § 212.5 (adding that parole is contingent on the "aliens present[ing] neither a security risk nor a risk of absconding").

[48] Resp. at 1–2; Pet'r's Suppl. Br. at 9.

[49] *Cf. Padilla v. Bowen*, No. 2:25-CV-10780-CAS-SK, 2025 WL 3251368, at *7 (C.D. Cal. Nov. 21, 2025) (finding "no reason to determine that [a noncitizen], if not in custody, would fail to appear at

Thus, Petitioner *might* also be entitled to relief on those alternative grounds. But because the Court already determined that Petitioner is entitled to relief under *Mathews*, the Court need not decide whether he would be entitled to the same under *Jackson*.

### D.      Relief

#### 1.       Bond Hearing or Release

Petitioner requests immediate release from custody or a bond hearing.[50] The majority of courts appear to require a bond hearing before an immigration judge ("IJ") for immigration detainees who have been detained in violation of due process.[51] "[G]iven that the Court has found a *procedural* due process violation,"[52] the Court agrees that a bond hearing is an appropriate remedy.[53] That said, the Court will order that a bond hearing be completed within a

---

future immigration proceedings" where a noncitizen had (1) previously been paroled; and (2) "abided by the conditions of his release and reported to his [immigration] appointments").

Even to the extent 8 U.S.C. § 1225(b)'s mandatory detention provisions were also meant to protect U.S. citizens, the Government would have had to determined that Petitioner is not a "security risk" when it paroled him in 2023. *See supra* note 47 and accompanying text. The record provides no reason to believe that Petitioner is a security risk now.

[50] Pet. at 10; Pet'r's Suppl. Br. at 23–24.

[51] *See, e.g.*, *Lopez-Arevelo*, 801 F. Supp. 3d at 688 (collecting cases).

[52] *See id.* at 687.

[53] *See Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) (explaining that federal courts "broad discretion in conditioning a judgment granting habeas relief"); *Haygood v. Quarterman*, No. 07-51380, 2008 WL 3244144, at *3 (5th Cir. Aug. 8, 2008) ("Courts have broad discretion in devising habeas relief." (citing *Hilton*, 481 U.S. at 775))

short window.[54] If Respondents do not provide the individualized hearing as required by this Order, they must release Petitioner under reasonable conditions of supervision.[55]

It bears repeating that the Government already determined that Petitioner was neither a flight risk nor a security risk when it paroled him into the United States.[56] Unless Respondents possess evidence that circumstances have since changed, such that Petitioner now poses a flight risk or security risk, the Court anticipates that Petitioner will be entitled to release on bond.[57]

### 2.    Attorney's Fees

Petitioner also requests costs and attorney's fees.[58] To recover fees against the Government, Petitioner must demonstrate that the Government waived its sovereign immunity.[59] Under the Equal Access to Justice Act ("EAJA"), attorney's fees "are not available in habeas corpus proceedings like this one."[60] The Court therefore denies this request.

---

[54] *Cf. Velasquez Salazar v. Dedos*, No. 1:25-CV-00835-DHU-JMR, 2025 WL 2676729, at *9 (D.N.M. Sept. 17, 2025).

[55] *See* 8 U.S.C. § 1231(a)(3) (requiring that the alien "appear before an immigration officer periodically for identification," "give information under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate," and "obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien.").

[56] *See supra* notes 46–47 and accompanying text.

[57] *Cf. Lopez-Arevelo*, 801 F. Supp. 3d at 687.

[58] Pet. at 10.

[59] *See Barco v. Witte*, 65 F.4th 782, 784 (5th Cir. 2023) ("Any waiver of the United States' sovereign immunity must be express, unequivocal, and any ambiguity therein strictly construed in favor of the sovereign.").

[60] See *Pineda v. Noem*, No. SA-25-CV-01518-XR, 2025 WL 3471418, at *6 (W.D. Tex. Dec. 2, 2025) (citing *Barco*, 65 F.4th at 785).

## IV.    Conclusion

For these reasons, the Court determines that (1) it has jurisdiction over this matter; and (2) Petitioner has established a violation of the Due Process Clause of the Fifth Amendment as applied to him.

The Court therefore **GRANTS** Petitioner Qiancheng Zhao's "Petition for Writ of Habeas Corpus" (ECF No. 1) **IN PART**.

The Court **ORDERS** Respondents to, by **Monday, May 11, 2026**:

1) provide Petitioner with a bond hearing before an Immigration Judge, at which the Government shall bear the burden of justifying, by clear and convincing evidence, the dangerousness or flight risk justifying Petitioner's continued detention;[61] or

2) release Petitioner from custody under reasonable conditions of supervision.

The Court further **ORDERS** Respondents to **NOTIFY** Petitioner and Petitioner's counsel **at least 24 hours** before the hearing or release (including the date, time, and location).

The Court further **ORDERS** Respondents to **FILE** an advisory with the Court **no later than Thursday, May 14, 2026**, containing (1) detailed reasons for the bond hearing decision; or (2) confirmation of Petitioner's release.

In the event Petitioner is released, the Court **ORDERS** Respondents to **RETURN** Petitioner's property to him (including identification, immigration papers, cell phone, money, keys, and any other personal effects).

---

[61] To secure their release at a bond hearing, noncitizens typically bear the burden of demonstrating that they are neither a danger nor a flight risk. 8 C.F.R. § 236.1(c)(8); *id.* § 1003.19(h)(3).

Where bond hearings are ordered as a habeas remedy, however, the burden shifts to the Government to show, by clear and convincing evidence, that the detainee poses a danger or flight risk. *Lopez-Arevelo*, 801 F. Supp. 3d at 688 (citing *Velasco Lopez*, 978 F.3d 842, 855 (2d Cir. 2020)).

The Court respectfully **DIRECTS** the Clerk of Court to **SUBSTITUTE** Attorney

General Todd Blanche in Former Attorney General Pamela Bondi's place as a Respondent.[62]

**So ORDERED and SIGNED this 4th day of May 2026.**

_____

**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**

---

[62] *Compare* Pet. at 4 (naming Pamela Bondi in official capacity), *with* FED. R. CIV. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name . . . . The court may order substitution at any time . . . .").